IN THE SUPREME COURT OF TENNESSEE

AT KNOXVILLE

FILED

July 6, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| STATE OF TENNESSEE | ) | FOR PUBLICATION |
| | ) | |
| Appellee | ) | FILED: JULY 6, 1999 |
| | ) | |
| v. | ) | JEFFERSON COUNTY |
| | ) | |
| JERRY WAYNE EDISON | ) | HON. BEN W. HOOPER, II, JUDGE |
| | ) | |
| Appellant | ) | NO. 03-S-01-9803-CC-00022 |

For Appellant:

LU ANN BALLEW
Assistant Public Defender
Dandridge, TN

For Appellee:

JOHN KNOX WALKUP
Attorney General and Reporter

MICHAEL E. MOORE
Solicitor General

MICHAEL J. FAHEY, II
Assistant Attorney General
Nashville, TN

AL C. SCHMUTZER, JR.
District Attorney General

JAMES L. GASS
Assistant District Attorney General
Sevierville, TN

OPINION

AFFIRMED                                                    BIRCH, J.

We granted this Tenn. R. App. P. 11 appeal to determine the appropriate standard of review of a trial court's decision to admit a breath-alcohol test result under State v. Sensing, 843 S.W.2d 412 (Tenn. 1992). The Court of Criminal Appeals held that the trial court had not abused its discretion in admitting the test result of the defendant, Jerry Wayne Edison.[1] We affirm the judgment of the intermediate appellate court and conclude that a trial court's Sensing decision must be presumed correct on appeal unless the preponderance of the evidence is to the contrary.

I

While on patrol during the early morning hours of February 17, 1994, Officer Steve Manning of the Dandridge Police Department observed a car stalled in the highway with an individual attempting to push it out of the road. When Manning stopped to offer assistance, he detected a strong odor of alcohol coming from the defendant, who was in the driver's seat of the car. Upon questioning, the defendant admitted that he was returning home from a country music bar in Knoxville when the alternator on his car ceased to work. Manning then conducted three field sobriety tests; the defendant failed each one. The defendant was arrested and transported to the sheriff's office.

---

[1]The Court of Criminal Appeals explained that although some court documents refer to the defendant as "Eidson," its policy is to list the defendant's name as it appears on the indictment. In this case, "Edison" is the name used in the indictment. Thus, to reduce the probability of confusion, we will also refer to the defendant as Jerry Wayne Edison.

At the sheriff's office, the defendant was observed for twenty minutes before undergoing breath-alcohol testing on an Intoximeter 3000. Officer Merlin Foister, who was trained by the Tennessee Bureau of Investigation, administered the test. The defendant's blood-alcohol content measured 0.12.[2]

II

In Sensing, this Court addressed the fundamental question of the "foundation to be laid for the admission of evidentiary breath tester results." Sensing, 843 S.W.2d at 416. Prior to Sensing, the certified operator of the test instrument was required to know the scientific technology involved in the instrument's function. Id. But advances in scientific technology have now facilitated the use of computerized instruments which are thoroughly tested and monitored to ensure a greater degree of accuracy.

---

[2]"Blood alcohol concentration (BAC) is expressed in percent weight by volume (%w/v) based upon grams of alcohol per 100 cubic centimeters of blood or per 210 liters of breath. A BAC of 0.10% w/v means 0.10 grams of alcohol per 100 cubic centimeters of blood (0.01g/100cc) or 0.10 grams of alcohol per 210 liters of breath. Alcohol concentrations in either breath or in air mixtures can also be expressed in milligrams of alcohol per liter of air (mg/l); to convert mg/l to units of percent weight by volume, multiply by 0.21. (Traffic Laws Anno., Sec. 11-002.1(a) (Supp. 1983)). The conversion factor of 0.21 is a commonly used value recognized by the Committee on Alcohol and Other Drugs of the National Safety Council; that is 210 liters of deep lung air at 34°C contains approximately the same quantity (mass) of ethanol [alcohol] as 100cc of pulmonary blood. See R.N. Harger, R.B. Forney and R.S. Baker. 'Estimates of the Level of Blood Alcohol from Analysis of Breath.' Quarterly Journal of Studies on Alcohol. 1-18 (1956)." Sensing, 843 S.W.2d at 415 n.2.

In recognition of these scientific advances, this Court determined that, in general, the average law enforcement officer administering a breath-alcohol test need not possess the technical background necessary to qualify as an expert. Id. Rather, we held that the testing officer must be able simply to testify to the following six prerequisites to admissibility:

> (1) that the tests were performed in accordance with the standards and operating procedure promulgated by the forensic services division of the Tennessee Bureau of Investigation,
> (2) that he was properly certified in accordance with those standards,
> (3) that the evidentiary breath testing instrument used was certified by the forensic services division, was tested regularly for accuracy and was working properly when the breath test was performed,
> (4) that the motorist was observed for the requisite 20 minutes prior to the test, and during this period, he did not have foreign matter in his mouth, did not consume any alcoholic beverage, smoke, or regurgitate,
> (5) evidence that he followed the prescribed operational procedure,
> (6) identify the printout record offered in evidence as the result of the test given to the person tested.

Id.

Once the State has satisfied the six prerequisites, the test result is admissible. Once admitted, a ratio of 0.10% or more creates a rebuttable presumption of intoxication. Tenn. Code Ann. § 55-10-408(b) (1993)(currently codified at Tenn. Code Ann. § 55-

4

10-408(a) (1998));[3] Sensing, 843 S.W.2d at 416. The defendant is free "to challenge the accuracy of the particular machine, the qualifications of the operator, and the degree to which established testing procedures were followed." Id. Such challenges, however, go only to the weight of the evidence, as distinguished from its admissibility.

Although Sensing prescribed the requisite criteria for the admissibility of breath-alcohol test results, it did not establish an appropriate standard of review to be applied to the trial court's decision on admissibility. Indeed, even during these proceedings, the parties have argued for different standards of review, including abuse of discretion, preponderance of the evidence, and de novo. A majority of the Court of Criminal Appeals determined that the abuse of discretion standard was the appropriate standard to be applied.

The admissibility of evidence is generally within the broad discretion of the trial court; absent an abuse of that discretion, the trial court's decision will not be reversed. State v. McLeod, 937 S.W.2d 867, 871 (Tenn. 1996). This standard has been applied to decisions regarding the qualifications, admissibility, relevancy, and competency of expert testimony. State v. Ballard, 855 S.W.2d 557, 562 (Tenn. 1993); see also State v. Brimmer, 876 S.W.2d 75, 79 (Tenn. 1994). To guide the trial court's discretion with respect to the admission of expert or

---

[3]If the defendant has previously been convicted of driving under the influence of an intoxicant, then a result of 0.08% or more creates a rebuttable presumption of intoxication. Tenn. Code Ann. § 55-10-408(b) (1998).

scientific testimony, we have recognized the following factors which may be considered:

> (1) whether scientific evidence has been tested and the methodology with which it has been tested;
> (2) whether the evidence has been subjected to peer review or publication;
> (3) whether a potential rate of error is known;
> (4) whether . . . the evidence is generally accepted in the scientific community; and
> (5) whether the expert's research in the field has been conducted independent of litigation.

McDaniel v. CSX Transp., Inc., 955 S.W.2d 257, 265 (Tenn. 1997).

With specific regard to breath-alcohol test results, Sensing removed the discretion which would have ordinarily accompanied the admission of scientific evidence. See State v. Bobo, 909 S.W.2d 788, 790 (Tenn. 1995) ("Sensing established the prerequisites for threshold admissibility of breath alcohol test results."). For example, as noted previously, the person administering the test need not be an expert. He or she must simply have been trained by the Tennessee Bureau of Investigation in the administration of such tests and must demonstrate that the test was performed according to that training.

Thus, instead of having to determine whether the proffered test result "will substantially assist the trier of fact to understand the evidence or to determine a fact in issue,"[4] the trial court must determine only whether the Sensing prerequisites

---

[4]Tenn. R. Evid. 702.

have been met.  In this sense, the prerequisites are essentially preliminary facts underlying the admission of the test result. Once they are proven by a preponderance of the evidence, see State v. Stamper, 863 S.W.2d 404, 406 (Tenn. 1993), the trial court should admit the result.

This leads us to agree with Judge Joseph M. Tipton's analysis in his concurring opinion in the Court of Criminal Appeals:

> [T]he matters of discretion relative to expert witness testimony and scientific test reliability for breath test results from an Intoximeter 3000 were essentially resolved in Sensing for DUI trials. . . . In this respect, the [abuse of discretion standard] would have us defer to a discretion that the trial court does not possess.

Under the preponderance standard, the trial court remains responsible for determining whether the Sensing prerequisites have been proven.  Therefore, the trial court's finding in regard to the Sensing prerequisites is the ultimate measure of test result admissibility.  We will presume that finding is correct, and we will overturn it only if the evidence preponderates otherwise. See State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996) (trial court's findings of fact on suppression issues are upheld unless the evidence preponderates otherwise).

III

The defendant argues that the State failed to satisfy two of the Sensing prerequisites and, thus, that the breath-alcohol

7

test result should not have been admitted.  Specifically, the defendant contends that the State failed to satisfy the third prerequisite[5] and the fifth prerequisite.[6]  For the reasons set forth below, we cannot hold that the evidence preponderates against the trial court's findings.

Regarding the third prerequisite, Foister testified that the Tennessee Bureau of Investigation calibrated the testing instrument every three months and that a document evidencing the instrument's certification was posted at the jail.  Although he could not specify the exact date of the last maintenance check performed, this lack of specificity does not detract from his testimony.  Accordingly, we cannot say that the evidence preponderates against the trial court's determination that this prerequisite was satisfied.

The evidence, however, is not as clear with regard to the fifth prerequisite.  On direct examination, Foister responded in the affirmative to several questions about following the proper procedures in testing the defendant.  Because these questions and answers were of a general nature, the trial court made the following observation:

> [I]t may be that Item #5, that he
> followed the prescribed operation
> procedure, it's kind of close.  It

---

[5]This prerequisite requires evidence "that the evidentiary breath testing instrument used . . . was tested regularly for accuracy and was working properly when the breath test was performed."  Sensing, 843 S.W.2d at 416.

[6]This prerequisite requires "evidence that [the testing officer] followed the prescribed operational procedure."  Id.

may be that you could make that more specific.

To address the trial court's concern about specificity, the State asked Foister the following question:

> What did you do to get the machine to operate properly?  What steps did you take with the defendant?

In response, Foister testified to the following procedures taken:

(1) observed the defendant for twenty minutes;
(2) input the required information into the machine;
(3) allowed the machine to purge itself of dust or any other substances;
(4) waited for the machine's direction to blow;
(5) had the defendant blow into the machine; and
(6) obtained a printout of the results.

The printout confirms that the required information was entered and that Foister tested a blank against a standard and then a blank against the defendant's sample.

Defense counsel was permitted to cross-examine Foister regarding satisfaction of the Sensing prerequisites.  During this examination, the following exchange took place:

> Q:  Can you recall or can you remember whether you followed those procedures that night with Mr. Eidson?
>
> A.  Well, I'm sure I followed the procedures, but I can't remember.  It's just certain procedures you have to follow to run the test.

Based on this statement, the defendant argues that the trial court erred in admitting the test result.

Foister testified that he followed the proper procedures, notwithstanding his failure to recall the specifics of the night in question. Although he admitted during cross-examination that he could not "remember" following the procedures, his testimony, as a whole, supports the trial court's determination that he had. Thus, we cannot say that the evidence preponderates against the trial court's finding that the <u>Sensing</u> prerequisites were met.

IV

To summarize, we conclude that a trial court's decision to admit breath-alcohol test results under <u>Sensing</u> will not be overturned unless the preponderance of the evidence is otherwise. Applying this standard to the facts of this case, we cannot say that the trial court erred in admitting the defendant's breath-alcohol test result. Accordingly, the judgment of the Court of Criminal Appeals is affirmed. Costs shall be assessed against the defendant.

_____
ADOLPHO A. BIRCH, JR., Justice

CONCUR:

Anderson, C.J.
Drowota, Holder, Barker, JJ.