# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
May 2000 Session

## STATE OF TENNESSEE v. JOY A. STINSON

**Direct Appeal from the Criminal Court for Anderson County**
**No. 97CR0261     James B. Scott, Jr., Judge**

---

**No. E1999-02082-CCA-R3-CD**
**September 29, 2000**

---

The defendant was convicted of one count of theft of property over $1,000 for her unauthorized charge of items at a retail store to her former employer's account. The trial court sentenced her to four years imprisonment, with three years suspended. On appeal, the defendant presents the issues of whether the trial court erred in allowing the State to introduce the testimony of an alibi rebuttal witness whom the State did not identify as a witness prior to trial, and in allowing the State to present evidence which she alleges tied her to an uncharged crime. Based upon our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Mart S. Cizek, Clinton, Tennessee, for the appellant, Joy A. Stinson.

Paul G. Summers, Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; James N. Ramsey, District Attorney General; and Elizabeth J. Boatner, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant was convicted of one count of theft of property valued over $1,000 and sentenced to four years, with all but one year suspended. Following the trial court's denial of her motion for a new trial, the defendant filed a timely appeal. The defendant presents two issues on appeal, which she states as follows:

> I.      Whether the court erred in allowing the State to introduce the testimony of a rebuttal witness whose identity was not revealed to the defense in compliance with discovery rules.

II.     Whether the trial court erred in allowing into evidence an uncharged crime that was unfairly prejudicial to the defendant.

Based upon our review, we affirm the judgment of the trial court.

## FACTS

On September 2, 1997, the defendant, Joy A. Stinson, was charged with one count of theft of property valued over $1,000. The indictment alleged that the defendant, who had been terminated on April 1, 1996, from her position as housing manager at Ridgeview Psychiatric Hospital in Oak Ridge, Tennessee, had charged items at K-Mart to the hospital's account from December 30, 1996 to January 4, 1997.

Trial was held on October 6, 1998. Jean Lantrip, facility manager at Ridgeview, testified that the defendant had been employed by the hospital as a house manager from August 1994 until April 1, 1996. During her tenure as hospital employee, Lantrip said, the defendant made purchases for the hospital at the Oak Ridge K-Mart, where the hospital had a thirty-day revolving credit account. Lantrip testified that the defendant, as an employee with purchasing authority, would have had access to the hospital's state sales tax exemption number.

Lantrip further testified that the receipt K-Mart utilized for purchases by non-profit organizations contained spaces for the name and address of the organization purchasing the items, and for the purchasing employee's signature. K-Mart required that the purchasing employee provide the organization's name and address, and sign the receipt. During the period in question, however, according to Lantrip, "K-Mart did not require or even ask or accept the original copy" of the hospital's purchase order, which would have shown that the employee's purchase had been authorized and approved by the hospital.

Lantrip testified that on three different days in December 1996 and January 1997 unauthorized purchases had been made at K-Mart on the hospital's account. The receipts from the transactions had all been signed "Janet Watson." Lantrip said that $759.98 worth of electronics equipment was charged on December 30, 1996, a $465 television set was charged on January 1, 1997, and a $227.93 videocassette recorder was charged on January 4, 1997. Lantrip stated that the hospital did not have an employee named Janet Watson, and that it had neither authorized these purchases, nor received any of these items. Consequently, the hospital had not paid the charges.

Cindy Ann Coffman, K-Mart cashier from November 1996 until June 1997, testified that on January 4, 1997, a woman charging items to the hospital had passed through her checkout line. Coffman said that the woman had filled in the lines on the store's receipt with the name and address of the hospital, and had signed the receipt with the name "Janet Watson." Coffman had not asked for any identification. She had, however, asked for the hospital's tax exempt number, which the woman had provided. Coffman identified the defendant as the woman who had charged items to the hospital.

Coffman said that she had known on January 4, 1997, that the defendant was not authorized to purchase items for the hospital. She had been told by store security, however, to notify them if the defendant came into the store, and to let them handle the situation. She notified security on January 4, but the defendant was able to leave the store with the items.

Coffman saw the defendant in the store again on February 5, 1997. On that day, the defendant was originally in Coffman's checkout line, but then moved to a line staffed by "Rosie," who was working the checkout line next to Coffman. Coffman said that she heard the defendant ask Rosie if she needed a tax exempt number, and that the defendant then left the checkout line and the store and did not come back. Coffman testified that she watched the defendant for the approximately five minutes that she was in the checkout lines. Coffman stated that she later picked the defendant's photograph out of six photographs shown to her by Detective Bill White. She was positive that the defendant was the woman who signed the January 4, 1997, receipt with the name "Janet Watson."

The prosecution sought to introduce the testimony of Abby Roseanna ("Rosie") Silva, the K-Mart cashier who handled the February 5, 1997, transaction with the defendant. The defense raised a Tennessee Rule of Evidence 403 objection to this testimony, arguing that its probative value was outweighed by the danger that it would cause unfair prejudice to the defendant. The trial court overruled the objection, instructing the jury that the testimony was to be considered for identification purposes only.

Silva testified that on February 5, 1997, the defendant moved to her checkout line from Coffman's line. Silva said that the defendant handed Silva her driver's license for identification. The name on the license was that of the defendant, Stinson. Silva positively identified the defendant as the woman who passed through her line that day. She said that she had, without any difficulty, picked the defendant out of a group of photographs later shown to her by Detective White.

Over the objection of the defense, the trial court allowed the prosecution to present, for identification purposes only, the testimony of Joann Gaylor, resource coordinator of purchasing at Ridgeview, who testified that she knew the defendant, and that she saw her in the K-Mart store on February 5, 1997.

Oak Ridge Police Detective William T. White testified that he investigated the thefts after K-Mart's loss prevention manager reported it to the police on February 5, 1997. White said that he interviewed Coffman on April 1, 1997, and that at that time she had, without hesitation, picked the defendant's photograph out of a group of photographs that he showed her. White stated that Coffman positively identified the defendant as the woman who charged the items to the hospital's account. In a separate interview, Silva positively identified the defendant by choosing her photograph out of the same group of six photographs that he had shown Coffman.

The defendant presented alibi testimony in an attempt to prove that she had not been at K-Mart on January 1, 1997. The defendant's mother, Joann Smith, testified that she talked by telephone with the defendant several times during the afternoon of January 1, 1997. Smith said that her daughter had been at her mother-in-law's house when Smith called her that afternoon. The

defendant's husband testified that, although he could not be sure, he believed that the defendant had been with him at his mother's house on January 1, 1997. The defendant's friend, Lana McDowell, testified that she had a definite, specific memory of the defendant babysitting for her on January 1, 1997.

The State sought to rebut the defendant's alibi with testimony of Audra Lee Gipson, investigator for the district attorney general's office. The defense objected on the grounds that the State had not notified the defense of the witness's identity prior to trial. After first having the prosecution examine the witness with the jury excused, the trial court permitted the witness to testify in the presence of the jury.

Gipson testified that he had interviewed alibi witnesses Joann Smith and Lana McDowell before trial. Gipson said that when he interviewed her, Smith stated that she believed her daughter had been at Smith's home with her on January 1, 1997. Gipson testified that McDowell told him that she believed the defendant babysat for her on January 1, 1997, but was not absolutely certain that she had. On cross-examination, Gipson admitted that Smith had not mentioned whether it was morning, afternoon, or evening that the defendant spent at her home.

The jury found the defendant guilty, and on October 14, 1998, the trial court entered judgment on the jury's verdict. The trial court sentenced the defendant to a four-year prison term, with three years suspended, and denied the defendant's motion for a new trial. The defendant filed a timely appeal to this court.

## ANALYSIS

### I. Testimony of the State's Rebuttal Witness

The first issue the defendant presents is whether the trial court erred in allowing the State to offer the testimony of its alibi rebuttal witness. The defendant argues that Investigator Gipson's testimony should have been barred because the State failed to disclose his identity prior to trial. She asserts that the State's failure to identify Gipson as a witness violates both Tennessee Rule of Criminal Procedure 16, which states that a party has a continuing duty to disclose material evidence to the opposing side as that evidence becomes available, and Tennessee Rule of Criminal Procedure 12.1(b), which states that the State has a duty to provide to defense counsel the name of any witness it intends to call to rebut the testimony of the defendant's alibi witnesses. The defendant contends that the trial court's failure to exclude Gipson's testimony constitutes reversible error.

The State argues that the trial court did not abuse its discretion in allowing the testimony. The State points out that Rule 12.1 of the Tennessee Rules of Criminal Procedure provides that the trial court *may* exclude the testimony of an undisclosed witness, but that the trial court is not *required* to do so. The State asserts that it did not know, until the defendant's alibi witnesses testified at trial, revealing discrepancies from the accounts they had given Gipson, that it would need to call Gipson as a rebuttal witness. The State contends that Rule 12.1 contemplates just such a situation as that which occurred at trial, since subsection (c) of the rule states that a party has a

-4-

continuing duty to promptly disclose the identity of any additional witness whose identity is learned prior to or during trial. The State asserts that it disclosed its rebuttal witness to the defense immediately at the conclusion of the alibi witnesses' testimony, in accordance with Rule 12.1 (c). The State argues that Rule 16 is inapplicable, because it expressly states that alibi witnesses are governed by Rule 12.1.

Tennessee Rule of Criminal Procedure 16(e) states that "Discovery of alibi witnesses is governed by Rule 12.1." Rule 12.1 states, in relevant part:

> **Rule 12.1 Notice of Alibi.** —(a) Notice by Defendant. — Upon written demand . . ., the defendant shall serve within ten days, . . . upon the district attorney general a written notice of an intention to offer a defense of alibi. Such notice by the defendant shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom the defendant intends to rely to establish such alibi.
>
> (b) Disclosure of information and Witness. — Within ten days thereafter . . . , but in no event less than ten days before trial, unless the court otherwise directs, the district attorney general shall serve upon the defendant or the defendant's attorney a written notice stating the names and addresses of the witnesses upon whom the state intends to rely to establish the defendant's presence at the scene of the alleged offense and any other witnesses to be relied on to rebut testimony of any of the defendant's alibi witnesses.
>
> (c) Continuing Duty to Disclose. — If prior to or during trial a party learns of an additional witness whose identity, if known, should have been included in the information furnished under subdivision (a) or (b), the party shall promptly notify the other party or the other party's attorney of the existence and identity of such additional witness.
>
> (d) Failure to Comply. — Upon the failure of either party to comply with the requirements of this rule, the court *may* exclude the testimony of any undisclosed witness offered by such party as to the defendant's absence from or presence at, the scene of the alleged offense. . . .
>
> (e) Exceptions. — For good cause shown, the court *may grant an exception to any of the requirements of this rule.*
>  . . . .

Tenn. R. Crim. P. 12.1 (emphasis added). As the rule makes clear, the decision to exclude the testimony of an undisclosed witness lies within the discretion of the trial court. See Tenn. R. Crim. P. 12.1 (d) and (e); see also State v. Cory Lamont Gentry, No. 02C01-9708-CC-00304, 1998 WL 608212 at *3 (Tenn. Crim. App., Jackson, Sept. 14, 1998), perm. app. denied (Tenn. Mar. 8, 1999) (stating that appellate court reviews trial court's 12.1 ruling "under abuse of discretion standard"); State v. Johnson, 673 S.W.2d 877, 883 (Tenn. Crim. App.), perm. app. denied (Tenn. 1984) (stating that rule grants the court "latitude to either exclude the testimony, or, for good cause shown, grant an exception to any of the requirements of the rule"). We review this issue, therefore, for an abuse of discretion.

At trial, the State argued that, because it could not have foreseen that the alibi witnesses would change their stories, it was entitled to present rebuttal testimony. Although the trial court initially appeared hesitant to accept the State's argument, stating, "It would appear to me that the spirit of discovery is for you to provide witnesses that you expect to call," it ultimately decided to allow the testimony. Allowing the testimony clearly was within the trial court's discretion. We note that the trial court acted to minimize any potential harm that the testimony might cause the defendant by listening to the proffered testimony outside the jury's presence before allowing the prosecution to present the witness to the jury, by allowing the defense to cross-examine the witness, and by affording the defense an opportunity to present surrebuttal. Under these circumstances, we can find no abuse of discretion by the trial court in allowing the State to present its alibi rebuttal testimony.

## II. Evidence that the Defendant was Present at K-Mart on February 5

The second issue the defendant raises is whether the trial court erred in allowing witnesses to testify that the defendant was present at K-Mart on February 5, 1997. The defendant argues that this testimony amounts to evidence of an uncharged crime, and should have been excluded under Tennessee Rule of Evidence 403 on the grounds that its prejudicial effect outweighed its probative value. The defendant also raises, for the first time on appeal, a Rule 404(b) objection to the evidence, arguing that the State failed to follow the proper procedures, under 404(b), for presentation of evidence of the defendant's other crimes or bad acts.

The State argues that the trial court did not abuse its discretion in allowing this testimony. The State asserts that the testimony regarding the defendant's presence in the store on February 5 was offered solely to prove identity, and that it was relevant to the issue of whether the defendant was the woman who committed the thefts on December 30, 1996, January 1, 1997, and January 4, 1997.

The admissibility of evidence generally lies within the sound discretion of the trial court. State v. Edison, 9 S.W.3d 75, 77 (Tenn. 1999); State v. Stinnett, 958 S.W.2d 329, 331 (Tenn. 1997). The trial court is accorded wide latitude in its decisions on the admissibility of evidence. Stinnett, 958 S.W.2d at 331; Overstreet v. Shoney's, Inc., 4 S.W.3d 694, 702 (Tenn. Ct. App.), perm. app. denied (Tenn. 1999). The trial court's decision to allow or disallow evidence will not be overturned on appeal absent a showing that it has abused its broad discretion. Overstreet, 4 S.W.3d at 702; State

v. Robinson, 930 S.W.2d 78, 84 (Tenn. Crim. App. 1995). We review this issue, therefore, under an abuse of discretion standard.

On appeal, the defendant argues that the trial court's allowance of the testimony of Silva and Gaylor was error under both Tennessee Rule of Evidence 403 and Tennessee Rule of Evidence 404(b). However, the only objection that the defendant raised to the evidence at trial was offered under Rule 403. Objections to evidence must be raised contemporaneously with the objectionable testimony, and must state the specific ground upon which they are based. Overstreet, 4 S.W.3d at 702; State v. Crawford, 620 S.W.2d 543, 545 (Tenn. Crim. App.), perm. app. denied (Tenn. 1981). An objection that is not raised at trial cannot be raised for the first time on appeal. Overstreet, 4 S.W.3d at 702; Crawford, 620 S.W.2d at 545. Consequently, we will consider only the Rule 403 objection that the defendant raised at trial.

Tennessee Rule of Evidence 403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. The defendant apparently concedes the relevance of the testimony regarding her February 5 presence in the store, but argues that its probative value is outweighed by its prejudicial effect. We disagree.

Silva's testimony showed that the defendant, whom Coffman had identified as the woman who charged items to the hospital on January 4, 1997, signing the receipt with the name "Janet Watson," had shown Silva a driver's license with the name "Stinson." Thus, Silva's testimony was relevant to the issue of whether the defendant was the woman who charged the items to the hospital on the dates in question. Gaylor, resource coordinator of purchasing at Ridgeview, simply testified that she knew and was familiar with the defendant, and that she had seen her in the Oak Ridge K-Mart on February 5, 1997. Gaylor's testimony was relevant to the issue of whether the defendant was in the store on February 5 and was the woman who showed the "Stinson" driver's license to Silva.

Silva did not testify that the defendant had either charged, or attempted to charge, items to the hospital on February 5. Neither Silva nor Gaylor testified that the defendant acted in any inappropriate or illegal manner. Moreover, the trial court, with regard to both witnesses' testimony, specifically instructed the jury that it was to consider the evidence offered for identification purposes only. The defendant was in no way unfairly prejudiced by this testimony. Accordingly, we find no abuse of discretion by the trial court in allowing the testimony.

## CONCLUSION

Based on the foregoing reasoning and authorities, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE