IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 29, 2002

**STATE OF TENNESSEE v. HOWARD B. HIGLEY**

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 229697      Douglas A. Meyer, Judge**

---

**No. E2001-02525-CCA-R3-CD**
**August 18, 2003**

---

A Hamilton County jury convicted the Defendant of driving under the influence (DUI), second offense. The trial court sentenced the Defendant to the following: "11 months, 29 days suspended after 6 months day for day (11 months, 29 days suspended probation after the 6 months)." The trial court also revoked the Defendant's driver's license for two years, ordered the Defendant to pay a $610 fine, and ordered the Defendant to avoid alcohol throughout the probation period. In addition, the trial court imposed twenty days of community service to be completed within one year. The Defendant now appeals, arguing the following: 1) that the trial court erred by denying the Defendant's motion to suppress the results of a breathalyser test, 2) that the trial court erred by limiting the testimony of the Defendant's accident re-construction expert's testimony about the Tennessee Department of Transportation's statistics regarding traffic accidents that occurred at the intersection in question, and 3) that the trial court abused its discretion by sentencing the Defendant to a sentence in excess of the maximum sentence available by statute for a DUI second offense. Finding no reversible error as concerns the conviction, we affirm the conviction. We vacate the sentence and remand for entry of an amended judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part,**
**Reversed in Part and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOE G. RILEY, J., joined.

David W. Wallace and Bryan H. Hoss, Chattanooga, Tennessee (on appeal); and Lee Davis, Chattanooga, Tennessee (on appeal and at trial), for the appellant, Howard B. Higley.

Paul G. Summers, Attorney General and Reporter; Peter M. Coughlan, Assistant Attorney General; William H. Cox, III, District Attorney General; and Parke Masterson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

# I. Facts

This case involves a multi-car traffic accident that occurred at approximately 5:30 p.m. on April 10, 1999, on Highway 153 in Hamilton County. Several witnesses testified that the Defendant was responsible for the accident, as the vehicle that he was driving rear-ended another vehicle stopped at a traffic light, ultimately causing a five-car crash. One motorist involved in the accident smelled alcohol on the Defendant and notified the investigating officer.

Officer Mark Bender of the City of Chattanooga Police Department testified that he was working patrol on April 10, 1999 and that he responded to the scene of a traffic accident involving the Defendant. Officer Bender stated that the time of the wreck was recorded by dispatch as 5:27 p.m., and the time of the breathalyser test, as it appeared on the intoximeter report, was 6:24 p.m. In a jury-out hearing to determine the admissibility of the breathalyser test results, Officer Bender testified that the times which appeared on the witnesses' statements, 5:35 p.m. and 5:40 p.m., were the approximate times that the statements were taken. He also stated that the 6:00 p.m. time recorded on the intoximeter report as the time of Defendant's arrest was "a good estimated time." Officer Bender testified that the Defendant registered .12 on the breathalyser machine.

Officer Jeff Bearden of the Chattanooga Police Department testified that the Defendant was arrested at the scene of the traffic accident and transported to the police station. He confirmed that the drive from the accident scene to the police station took about ten minutes. Bearden also confirmed that the intoximeter report fairly and accurately recorded the testing time as 6:24 p.m. "based on that clock." Officer Bearden agreed that "based on that clock," his observation of the Defendant at the station would have started at 6:04 p.m. He testified that the times which appear on the various police paperwork were either approximations or derivations from various unsynchronized clocks. Officer Bearden repeatedly testified that he personally watched the Defendant for twenty minutes in accordance with the Sensing requirements and timed the twenty minutes on his own hand watch. He stated, "I was . . . that was literally my job while we were down there at the jail is to observe him for the twenty minutes." From this jury-out hearing, the trial court found, "there's no reason not to believe the officer . . . that he looked at his watch and it was over twenty minutes."

The Defendant recalled the events of April 10, 1999 as including a golf tournament, a few beers, and ultimately a traffic accident at the intersection of Gadd Road and Highway 153. He recounted the events surrounding the traffic accident as follows:

> I was heading up towards the light. I can't remember exactly if the light – it'd been red, I could see it red from way back where I was coming toward. I can't remember if it had just turned or was about to turn or something. But anyway, I got up closer to the traffic. I moved into the lane, started to move into the lane that I need to be in, and my phone, I have one of those cords that you plug into your cigarette lighter, and my phone was. . . plugged into my cigarette lighter just like it always is, and the phone was sitting down on the center thing, and the phone had come dislodged during travel, I'm assuming, and the phone was kind of like hanging down towards the, the side of the center console in the car. And I kind of reached down like that

and got back up, and as I got up, I had impact. . . . My car hit this Ford Explorer that was in front of me. . . .

The Defendant acknowledged that the accident was his fault.

As part of the Defendant's evidence, defense counsel attempted to call as an expert witness Bobby Eugene Jones, Jr., an accident reconstructionist.

During a jury-out hearing, Jones testified that he had seen the Tennessee Department of Transportation statistics regarding motor vehicle accidents at the intersection of Gadd Road and Highway 153, where the accident in this case happened. Jones admitted that the statistical analysis did not indicate whether the accidents involved alcohol or drugs. The trial court stated that the proposed testimony regarding the statistical analysis was immaterial to the issue of whether the Defendant was under the influence of alcohol at the time of the accident, and excluded the proposed testimony as to the accident statistics. However, the trial court did allow Jones to testify that based on the property damage from the accident, the Defendant's vehicle was traveling between 20 and 30 miles per hour.

## II. Analysis

### A. Admission of Breathalyser Test Results into Evidence

The Defendant contends that the trial court erred by denying his motion to suppress the results of his breathalyser test. As a general matter, we note that "[t]he admissibility of evidence is generally within the broad discretion of the trial court . . . [and that] absent an abuse of that discretion, the trial court's decision will not be reversed." State v. Edison, 9 S.W.3d 75, 77 (Tenn. 1999). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence and resolve any conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The trial court remains "the ultimate measure of test result admissibility." Edison, 9 S.W.3d at 78.

Specifically, the Defendant argues that the test was conducted in violation of the Tennessee Supreme Court's ruling in State v. Sensing which requires that an officer closely observe a defendant for twenty minutes prior to administering a breathalyser test. See State v. Sensing, 843 S.W.2d 412 (Tenn. 1992). Fulfilment of all of the Sensing requirements is a mandatory prerequisite to the admission of test results into evidence. Edison, 9 S.W.3d at 77. The trial court should admit the results of a breathalyser test when the State proves that the testing conditions satisfy the Sensing requirements by a preponderance of the evidence. Id. at 78. A trial court's determination as to whether the State proved compliance with the Sensing requirements is presumptively correct "unless the evidence preponderates otherwise." Id.

In Sensing, our supreme court adopted the following test regarding the admission of blood alcohol tests: The testing officer must be able to testify (1) that the tests were performed in accordance with the standards and operating procedure promulgated by the forensic services division

of the Tennessee Bureau of Investigation, (2) that he was properly certified in accordance with those standards, (3) that the evidentiary breath testing instrument used was certified by the forensic services division, was tested regularly for accuracy and was working properly when the breath test was performed, (4) that the motorist was observed for the requisite 20 minutes prior to the test, and during this period, he did not have foreign matter in his mouth, did not consume any alcoholic beverage, smoke, or regurgitate, (5) that he followed the prescribed operational procedure, and (6) that he can identify the printout record offered in evidence as the result of the test given to the person tested. Sensing, 843 S.W.2d at 416.

The purpose of the twenty-minute time requirement is to "ensure[] that no foreign matter is present in the defendant's mouth that could retain alcohol and potentially influence the results of the test." State v. Cook, 9 S.W.3d 98, 101 (Tenn. 1999). This Court has recognized two distinct elements of the Sensing twenty-minute observation requirement. State v. Arnold, 80 S.W.3d 27, 29 (Tenn. Crim. App. 2002). The State must establish that (1) the officer observed the Defendant for twenty minutes and (2) the Defendant did not "smoke, drink, eat, chew gum, vomit, regurgitate, belch or hiccup during the twenty minutes prior to the test." Id.

The Defendant argues that the times recorded in the police paperwork indicate that in this case a twenty-minute observation period prior to the breathalyzer test would have been impossible. However, Officer Bender testified that he personally watched the Defendant for twenty minutes at the police station. He stated that the times recorded in the police paperwork were approximations and estimates, but he reported that he timed the twenty minutes of observation on his own hand watch. The trial court credited the testimony of Officer Bender and stated, "there is no reason not to believe the officer."

The trial court made a determination of credibility and found that Officer Bender did observe the Defendant for twenty minutes despite the inconsistencies of the recorded times in the police paperwork. Though there may be other theories that could explain the apparent discrepancies between the recorded times and Officer Bender's testimony regarding the twenty-minute observation period, the evidence in this case does not preponderate against the trial court's finding that Officer Bender's testimony was credible. Thus, we conclude that the test was properly admitted into evidence.

## B. Exclusion of Immaterial Expert Testimony

The Defendant next contends that the trial court erred by limiting the testimony of an accident reconstruction expert who would have testified about the Tennessee Department of Transportation's statistics regarding motor vehicle accidents that occurred at the intersection of Gadd Road and Highway 153. "The admissibility of expert testimony is a matter within the trial court's discretion and will not be reversed on appeal absent an abuse of discretion." State v. Robinson, 73 S.W.3d 136, 149 (Tenn. Crim. App. 2001). The testimony of an expert witness is admissible if it will "substantially assist" the jury in understanding evidence or determining a fact at issue. Id. In order for scientific or technical evidence to be admitted into evidence, it must be relevant to a fact at issue

in the case. Tenn. R. Evid. 702. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401.

The Defendant argues that the accident re-construction expert's testimony about the statistics regarding traffic accidents at the intersection of Gadd Road and Highway 153 was relevant to his defense because it offered proof of the cause of the accident. However, the cause of the accident was not a contested issue at the criminal trial. The Defendant admitted that the accident was his fault and that his attention had been diverted from the road by his cellular phone. Moreover, the trial court determined that the statistical analysis was immaterial as to whether the Defendant was under the influence of alcohol at the time of the accident. Thus, testimony regarding other accidents at this intersection was not relevant and would not have assisted the jury in understanding the facts at issue in this case. Because causation was not an issue at trial, the trial court did not abuse its discretion by excluding the testimony of the expert witness regarding the traffic accident statistics.

## C. Sentencing

The Defendant contends, and the State concedes, that the sentence imposed by the trial court exceeds the maximum sentence allowed for driving under the influence, second offense, a Class A misdemeanor. Tennessee Code Annotated § 55-10-401(a)(1) provides that, "it is unlawful for any person to drive or to be in physical control of any automobile or other motor vehicle on any public roads . . . while under the influence of any intoxicant . . . ." On a second conviction under § 55-10-401(a), the trial court must impose a fine between six hundred dollars ($600) and three thousand, five hundred dollars ($3,500). Id. § 55-10-403(a)(1). The court also should impose confinement in the county jail or workhouse for "not less than forty-five days nor more than eleven months and twenty-nine days." Id.

In this case, the jury convicted the Defendant of driving under the influence, second offense. The trial court imposed a sentence of "11 months, 29 days suspended after 6 months day for day (11 months, 29 days suspended probation after the 6 months)." Although the judgment is somewhat ambiguous, it is clear from the transcript of the sentencing hearing that the trial court sentenced the Defendant to an effective eighteen-month sentence. The trial court stated the following at the hearing:

> Now, I'll give him a choice, because six months active, that would be followed by 11 months 29 day suspended sentence. If I gave him 11 months 29 days at 75 percent, then he wouldn't have to be on probation for a year after that. He would have built the sentence, in other words. But the way I'm wording it is 11 months 29 days suspended after six months active time, and then he'll be on supervised probation for 11 months, 29 days.

This sentence is inappropriate because it exceeds by six months the maximum sentence allowed by statute for punishment of this offense. Therefore, although we affirm the conviction, the sentence is modified and the case is remanded to the trial court for entry of an amended judgment sentencing the Defendant to six months' confinement followed by five months and twenty-nine days' probation.

For the foregoing reasons, we AFFIRM the judgment of the trial court in part and REVERSE in part.  We REMAND the case to the trial court for entry of an amended judgment consistent with this opinion.

_____
ROBERT W. WEDEMEYER, JUDGE