# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
May 13, 2003 Session

## STATE OF TENNESSEE v. STEVEN A. NORVELL

**Appeal from the Criminal Court for Davidson County**
**Nos. 2001-T-520 and 2002-T-195    Frank G. Clement, Jr., Judge**

---

**No. M2002-01866-CCA-R3-CD - Filed December 12, 2003**

---

The defendant, Steven A. Norvell, was convicted by a Davidson County Criminal Court jury of driving under the influence (DUI), third offense, a Class A misdemeanor. The trial court sentenced him to eleven months, twenty-nine days to be served as one hundred forty days in jail and the remainder on probation. In addition, the trial court ordered that he participate in an alcohol evaluation and treatment program, suspended his driving privileges for three years, and imposed a one thousand one hundred dollar fine. The defendant contends that the evidence is insufficient to support his conviction because the state offered no proof that the result of his breathalyzer test was accurate. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which DAVID H. WELLES and ALAN E. GLENN, JJ., joined.

M. Scott Collins, Nashville, Tennessee, for the appellant, Steven A. Norvell.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Jennifer Stribling Tackett and Scott R. McMurtry, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

Officer Edwin Krenk of the Metropolitan Nashville Police Department (Metro Police) testified that on June 1, 2001, at about 2:20 a.m., he saw the defendant drive through the intersection of Broadway and Eighth Avenue with no headlights. He said he stopped the defendant and approached the defendant's white pickup truck. He said he noticed a strong smell of alcohol and asked to see the defendant's driver's license. He said that the defendant fumbled while getting the license, that the defendant's moves appeared calculated, that the defendant's eyes were extremely red and watery, and that the defendant's speech was slurred.

Officer Krenk testified that he asked the defendant to step out of the truck and take field sobriety tests. He said that the defendant agreed to take the tests and that he gave the tests in accordance with his training. He said that the area was well lit, that he instructed the defendant on the one-leg stand and the walk and turn tests, and that he demonstrated both tests to the defendant. He said he could not remember if he asked the defendant to repeat the instructions to him. He said the defendant performed the tests and showed indications of intoxication on both. He said that on the walk and turn test, the defendant scored six out of eight possible indicators of intoxication and that on the one-leg stand, the defendant scored two out of four possible indicators of intoxication.

Officer Krenk testified that he arrested the defendant, read the defendant his implied consent rights, and asked the defendant if he understood those rights. He said the defendant said yes and agreed to take a breathalyzer test. He said he placed the defendant into the back of his patrol car and watched the defendant for twenty minutes before giving him the breathalyzer. He said the defendant did not drink any alcohol, regurgitate, smoke, or have anything in his mouth during that time. He said that after the observation period, he instructed the defendant on how to take the breathalyzer. He said that before the defendant took the breath test, the defendant stated that he had consumed six beers and that he was going to fail the test. He said that he gave the defendant the breath test and that the defendant's blood alcohol content (BAC) registered 0.12% at 2:54 a.m. Officer Krenk identified the defendant's test slip, which had the defendant's fingerprint on it, and the test slip was admitted into evidence. He said there was no doubt in his mind that the defendant was driving while impaired.

Officer Krenk testified that he has an Intoxilyzer 1400 in his patrol car and that he was certified in May 2000 by the Tennessee Bureau of Investigation (TBI) to use the Intoxilyzer 1400. He said that his Intoxilyzer 1400 is calibrated and certified by the TBI every ninety days and that it had been certified by the TBI on March 28, 2001. The machine's certificate was admitted into evidence and states that it met the performance standards established by T.C.A. § 38-6-104(g) and that it was found to perform within the standards adopted in Section 5 of the TBI's standards for scientific instruments to measure breath alcohol. Officer Krenk testified that the Metro Police gives each Intoxilyzer a "wet bath" during every shift, that he gave the breathalyzer test in accordance with the TBI's standards, that the Intoxilyzer 1400 was working properly on the night of June 1, and that the defendant's test was a completed test. He said that if the Intoxilyzer 1400 had not been working properly, it would not have completed the test.

On cross-examination, Officer Krenk testified that the only problem he saw with the defendant's driving was that the defendant had no headlights. He said that all police officers were trained to perform the field sobriety tests in the same way and that officers could take into account different variables such as a person's height and weight. He said that there was no way to input such variables into the breathalyzer machine and that it measured all people the same, regardless of height, weight, and gender factors. He said that the flashing blue lights on the front of his patrol car were turned off and not shining on the defendant's face during the field sobriety tests. He said that the field sobriety tests were administered on the sidewalk and that there was very little traffic.

Officer Krenk testified that while he instructed the defendant on the walk and turn test, he made the defendant stand heel to toe on a line. He said that this is not a normal stance and that people may try to balance themselves on something when standing heel to toe. He said that the defendant tried to balance on something, that the defendant began the task before being instructed to do so, that the defendant could not keep his balance during the test, that the defendant did not touch heel to toe on all nine steps, and that the defendant stepped off the line during the test. He said that these are all indicators of intoxication. He said that officers are trained to give a little leeway on touching heel to toe and that the defendant took nine steps as required by his instructions. He said that indicators of intoxication for the one-leg stand test are whether the subject puts his or her foot down, whether the subject keeps both hands to the side, and whether the subject hops to keep balance. He said that the defendant raised his arms and hopped throughout the test and that the defendant's count was off.

Officer Krenk testified that he gave his Intoxilyzer 1400 to the TBI every ninety days for certification and that he was not present when it was certified. He acknowledged that he was not a scientist and that his job did not require him to know the science behind the Intoxilyzer. He said that he could not explain how the Intoxilyzer converted a breath alcohol measure into a blood alcohol measure and that he could not prove that the science behind the breathalyzer machine was good science as opposed to junk science. He acknowledged that he could not prove the machine was accurate. The jury convicted the defendant of driving with a blood alcohol concentration of 0.10% or greater.

The defendant argues that the evidence is insufficient to support his conviction because the state offered no proof that the breathalyzer test result was accurate. The state responds that the breath test results were admitted in accordance with State v. Sensing, 843 S.W.2d 412 (Tenn. 1992), and, therefore, that the evidence is sufficient to support the conviction. We believe that the evidence is sufficient.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that we do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Tennessee Code Annotated § 55-10-401(a)(2) provides in pertinent part that

> [it] is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment

3

> house complex, or any other premises which is generally frequented by the public at large, while:
>
> . . . .
>
> (2) The alcohol concentration in such person's blood or breath is ten-hundredths of one percent (.10%) or more.

The plain language of the statute does require the state to show that the defendant's blood alcohol concentration was .10 percent or more at the time the defendant was driving.

In <u>Sensing</u>, our supreme court addressed the necessary foundation that the state must establish in order to admit breath test results from an Intoximeter 3000. Before <u>Sensing</u>, the certified operator of the test machine had been required to know the scientific technology behind the machine's function. <u>Id.</u> However, in <u>Sensing</u>, the court held that in order for the test results to be admissible evidence in a DUI by impairment case, the testing officer only had to testify as to the following six prerequisites:

> (1) that the tests were performed in accordance with the standards and operating procedures promulgated by the forensic services division of the Tennessee Bureau of Investigation,
>
> (2) that he was properly certified in accordance with those standards,
>
> (3) that the evidentiary breath testing instrument used was certified by the forensic services division, was tested regularly for accuracy and was working properly when the breath test was performed,
>
> (4) that the motorist was observed for the requisite 20 minutes prior to the test, and during this period, he did not have foreign matter in his mouth, did not consume any alcoholic beverage, smoke, or regurgitate,
>
> (5) evidence that he followed the prescribed operational procedure,
>
> (6) identify the print-out record offered in evidence as the result of the test given to the person tested.

<u>Id.</u> at 416. Once the state satisfied the prerequisites, the test result was admissible, and a BAC of 0.10% or more created a rebuttable presumption of intoxication. <u>See</u> T.C.A. § 55-10-408(a) (2002) (amended 2003). However, the court stated that a defendant was free "to challenge the accuracy of the particular machine, the qualifications of the operator, and the degree to which established testing procedures were followed." <u>Sensing</u>, 843 S.W.2d at 416. "Such challenges, however, go only to

4

the weight of the evidence as distinguished from its admissibility." State v. Edison, 9 S.W.3d 75, 77 (Tenn. 1999).

The defendant contends that the state failed to prove that his breathalyzer test result of 0.12% was an accurate measure of his BAC because the state failed to establish the accuracy of the Intoxilyzer 1400. While he admits that the test result was properly admitted into evidence under the six Sensing prerequisites, he argues that Sensing did not establish a presumption of reliability as to the accuracy of the test result in this case because Sensing creates such a presumption only with regard to a DUI by impairment charge, not a charge of DUI per se. However, in State v. Conway, 77 S.W.3d 213, 220 (Tenn. Crim. App. 2001), this court stated that

> [Sensing] did not address DUI per se under Tenn. Code Ann. § 55-10-401(a)(2) as this portion of the statute had not been enacted at the time of Sensing.

> Nevertheless . . . we see no reason to require expert testimony for breath test results for DUI per se, while not requiring expert testimony to establish an inference for DUI by impairment. We find nothing in the constitution, statutes or rules that would require different treatment, and this court is not at liberty to engraft such a requirement.

Thus, if the Sensing prerequisites are met in a DUI per se case, the reliability of breath test results is presumed without expert testimony.

Procedurally, we believe the defendant's arguments about reliability beg the question. If a scientific test is not reliable, then its results are irrelevant to the issues on trial and potentially prejudicial. Therefore, the results of the test would be inadmissible. Here, the defendant allowed the test results into evidence and acknowledged that it was properly admitted under the Sensing requirements. However, application of the Sensing requirements to the Intoxilyzer 1400 for the purpose of admissibility necessarily presupposed the reliability of the device to measure blood alcohol.[1]

Given these circumstances, pursuant to Conway, the state was not required to present expert testimony to prove the accuracy of the test results. Officer Krenk testified that he was certified to administer breath tests with the Intoxilyzer 1400, that he performed the defendant's breath test in accordance with the TBI's standards, that his test machine had been certified by the TBI less than ninety days before the defendant's DUI arrest, and that his machine would not have completed the test if it had been working improperly. We also note that the defendant did not provide any evidence of the test's inaccuracy. We conclude that the jury was entitled to accredit the results of the breath

---

[1]The question of whether the Intoxilyzer 1400 is a scientifically reliable breath test machine whose reliability is sufficient to allow the Sensing factors to apply has not been raised and is not before us.

test and the evidence is sufficient to support the defendant's conviction of driving with a blood alcohol content of .10 percent or more.

Based upon the foregoing and the record as whole, we affirm the judgment of the trial court.

_____

JOSEPH M. TIPTON, JUDGE