IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 8, 2002

## JOHNNY O. CLARK v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-20669      John P. Colton, Jr., Judge**

---

**No. W2001-02856-CCA-R3-PC - Filed August 8, 2002**

---

The petitioner appeals as of right from the denial of his petition for post-conviction relief from his conviction for first degree murder, contending that: (1) he was denied the effective assistance of trial counsel; (2) the post-conviction court erred by refusing to admit the affidavit of a deceased potential defense witness into evidence at the post-conviction evidentiary hearing; and (3) the post-conviction court and post-conviction counsel erred by their failure to comply with provisions of the Post-Conviction Procedure Act and Supreme Court Rule 28. We affirm the judgment of the post-conviction court denying the petition for post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Jeff Mueller, Jackson, Tennessee, for the appellant, Johnny O. Clark.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Tom Hoover, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The petitioner, Johnny O. Clark, was convicted of first degree murder in the Shelby County Criminal Court in February 1997, and sentenced to life imprisonment. His conviction was affirmed on direct appeal to this court, and his application for permission to appeal to the Tennessee Supreme Court was denied. See State v. Johnny O. Clark, No. 02C01-9708-CR-00307, 1998 Crim. App. LEXIS 446 (Tenn. Crim. App. Apr. 14, 1998), perm. to appeal denied (Tenn. 1998). The direct appeal opinion provides the following synopsis of the evidence at the petitioner's trial:

On the evening of March 14, 1995, a host of people, including family, acquaintances, and others gathered at the 3171 Nathan Street residence of Betty Clark. Included in this group was nineteen year old, Deron Cathey, the victim in this case. As was customary, Mrs. Clark allowed various people to spend the night at her home. . . . On this particular evening, Jerrekcha Clark, Mrs. Clark's granddaughter, and her boyfriend, Robert Patterson, went to sleep in the living room; Mrs. Clark and Eric Johnson, Jerrekcha's nine year old son, were sleeping in the front bedroom; Mose Dire, a family friend, and [the victim] occupied the middle bedroom; and Felix Lockett, "an old guy," and Tony Valentine, the appellant's brother, retired to the rear bedroom. Betty Clark is the mother of the appellant. Although the appellant usually stayed at his mother's house, he had been absent from the residence for the past three days.

At approximately 3:15 a.m., on March 15, Tony Valentine was awakened by the appellant and Mose Dire in the kitchen. . . . Valentine confronted the appellant in the kitchen and asked him to leave the home because of previous altercations with [the victim]. . . . .Valentine then escorted the apparently angry appellant to the front door of the residence and locked the door.

Sometime later that morning, around 5:00 a.m., the appellant returned to his mother's house and began knocking on the front door. Jerrekcha and Mrs. Clark were awakened by the noise. Mrs. Clark told Valentine to let the appellant in the house. . . . The appellant accompanied Valentine to the rear bedroom where he told his brother, "I'm going to sleep in my bed." At this time, Valentine noticed that, although Mose Dire was asleep in the middle room, [the victim] was awake and sitting on the bed. Valentine then went back to sleep.

Shortly thereafter, the sleeping residents were awakened by the sound of gunfire. Valentine awoke to find the appellant "bent over and shooting [the victim]." Mose Dire observed [the victim] laying [sic] across the bed with his hands raised palm up in the air. [The victim] was not armed with a weapon and begged the appellant, "[P]lease don't do this." After firing multiple gunshots at the unarmed [victim], the appellant ran out the front door of the house.

Id. at **1-4 (footnotes omitted).

Shortly after being transported to the hospital, the victim died from his injuries. Id. at *5. A police officer, responding to the shooting and standing on the house's front porch at 6:15 a.m.,

spotted the petitioner, who was subsequently placed under arrest, emerging from between two houses. Id. Investigating officers found no weapons in the home, and all the witnesses who were present at the scene testified that no weapons were kept in the residence. Id. The petitioner testified at trial, however, that the victim was a drug dealer who sold drugs out of his mother's home, and that a number of weapons were hidden in the residence. Id. at *7. He said that he was reaching in his drawer for cologne when the victim approached and asked if he was ready for his "'ass whooping.'" Id. at *6. The petitioner said that he just looked at the victim, and the victim then walked off "'to the right where guns are kept there in the house.'" Id. When the petitioner looked up after putting his cologne back in the drawer, the victim was "'coming toward [him].'" Id. The petitioner said that he was scared, and shot the victim as he was coming toward him. He admitted he had bought the gun he used in the shooting, a .38 revolver, earlier that evening from a man on the street. Id. The petitioner's mother, testifying on his behalf, confirmed that the petitioner and the victim had been arguing for about a month, and said that the victim had told her he was going to kill the petitioner. Id. at *3 n.3.

On December 4, 1998, the petitioner filed a *pro se* petition for post-conviction relief, alleging, *inter alia*, that he was denied the effective assistance of trial counsel. On January 26, 1999, the post-conviction court appointed counsel for the petitioner. Subsequently, he filed an amended *pro se* petition for post-conviction relief,[1] asserting that his case had been continued for over two years and that his post-conviction counsel had failed, despite his repeated requests, to amend his petition to include allegations that the trial court failed to charge the jury on lesser-included offenses and issued unconstitutional instructions on reasonable doubt.[2] The petitioner additionally alleged that his trial counsel failed to adequately investigate and prepare the case, failed to communicate with the petitioner, failed to file appropriate pretrial motions, failed to make timely and necessary objections at trial, and failed to call defense witnesses to impeach the testimony of the State's witnesses.

At the June 28, 2001, post-conviction hearing, the petitioner testified that his trial counsel met with him only three or four times in the four months immediately preceding his trial, and only one or two additional times. The petitioner made a number of complaints against his trial counsel. He said that trial counsel failed to prepare him for his cross-examination testimony, failed to adequately investigate the case, and never told him of having talked to any of the individuals who were present in the house at the time of the shooting.

The petitioner's primary complaint was that trial counsel failed to obtain the statement of Felix Lockett, whom the petitioner claimed would have corroborated that he shot the victim in self-defense. He testified that Lockett, who was renting a room from the petitioner's mother at the time of the shooting, was the only individual, besides the victim and the petitioner, present in the room

---

[1]The date stamp on this petition is smudged, and consequently illegible.

[2]The petitioner later dropped these allegations, in part because the trial transcript reveals that the jury was instructed as to lesser-included offenses.

where the shooting occurred. The petitioner believed that Lockett was admitted to the hospital approximately three weeks prior to the trial, and said that he had subsequently died. Although he told trial counsel that Lockett would support his account of the shooting, trial counsel failed to secure his testimony, in spite of the nearly two years that elapsed from the time of the petitioner's arrest until the trial. The petitioner admitted on cross-examination, however, that Lockett was not under any disability during the months that elapsed between the shooting and his admittance to the hospital. He said that he thought he had first learned that Lockett was in the hospital at some point during his trial.

The petitioner identified a typewritten document entitled "Sworn Testimony of Felix Lockett" as Lockett's affidavit containing his sworn testimony of the events that transpired the morning of the shooting, and agreed that it provided a different account from that given by the State's witnesses at trial. He said that the affidavit was prepared by someone acting on his behalf, who contacted Lockett before his death, obtained the affidavit, and provided it to the petitioner. Post-conviction counsel sought to have the affidavit admitted into evidence at the hearing, but the post-conviction court denied the request, ruling that a proper foundation for its admittance had not been laid. Consequently, the affidavit was marked as an exhibit for identification purposes only.

Trial counsel testified that he was a graduate of The University of Memphis School of Law, and had been licensed to practice law for twenty-two years. He was currently a judicial magistrate, a post to which he had been appointed two to two and a half years prior to the date of the evidentiary hearing. He had spent eighteen years with the public defender's office, and most of his practice over the years had consisted of criminal defense work. He was a member of the public defender's capital defense team at the time he was appointed to represent the petitioner, although the petitioner's was not a capital case. He estimated that he had handled about eight capital cases and twenty to thirty first degree murder cases at the time of the petitioner's trial.

Trial counsel said he had attempted to locate and interview every individual who was in the house at the time of the shooting, including Felix Lockett. His efforts to find Lockett, which ultimately proved unsuccessful, included making at least two personal visits to the house, sending investigators to the house on other occasions, talking with members of the household and the community, and twice issuing subpoenas for Lockett. Trial counsel said he thought the State had also tried to subpoena Lockett at least once. Although others in the community were unable to provide Lockett's whereabouts, trial counsel learned from them that Lockett was elderly, and "may have had some problem with his mental thinking at that time." His understanding was that Lockett had suffered a head injury and was in a hospital somewhere. However, he did not know the name or location of the facility, and did not think he had sent investigators to ascertain in which hospital the witness might have been. His recollection was that the information he had received about Lockett's mental condition had led him to believe that he would not make a good witness at trial. He said that he had kept the petitioner fully informed of everything that happened in the case, including the situation with Lockett. The petitioner wanted to go forward with the trial rather than seek another continuance.

Trial counsel testified that their theory of defense, which the petitioner had approved, was to show that the victim was a "threatening person, a young thug," whom the petitioner shot in self-defense. He said that he explained the petitioner's Fifth Amendment rights, including his right to choose whether he wanted to testify in his own behalf. The petitioner had wanted to testify, and the decision to do so had been his. Counsel had prepared the petitioner by having him go through his testimony during rehearsals at which trial counsel played the role of both prosecutor and defense attorney. Trial counsel said he believed that they had put on "a pretty good case," as evidenced by the fact that "[t]he jury came back twice and it appeared that they may have been hung."

On cross-examination, trial counsel testified that he thought he had received Lockett's statement as part of the discovery provided by the State, but that he did not have his case file, and thus could not recall what information the statement contained. Regardless, he did not believe Lockett's testimony would have made any difference to the outcome of the trial.

On October 29, 2001, the post-conviction court entered an order denying the petition for post-conviction relief, finding that the petitioner failed to meet his burden of proving that he was denied the effective assistance of trial counsel. Specifically, the court found that trial counsel adequately investigated and prepared the case, including the possibility of calling Lockett as a witness, and that his performance fell within the range of competence demanded of criminal attorneys. The post-conviction court further found that the petitioner failed to show how he was prejudiced by the delay in his post-conviction hearing, or by post-conviction counsel's failure to amend his *pro se* petition for post-conviction relief.

## ANALYSIS

### I.  Post-Conviction Standard of Review

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de* novo, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns, 6 S.W.3d at 461.

## II. Ineffective Assistance of Counsel

The petitioner first contends that the post-conviction court erred in finding that he received the effective assistance of trial counsel. To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient, and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997), perm. to appeal denied (Tenn. 1998) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065, and Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). When analyzing a petitioner's allegations of ineffective assistance of counsel, this court must indulge in a strong presumption that the conduct of counsel fell within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless they were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

Because both prongs of the test must be satisfied, a failure to show either deficient performance or resulting prejudice results in a failure to establish the claim. See Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). For this reason, courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

The petitioner contends on appeal that trial counsel provided ineffective assistance by (1) failing to move for a mistrial, based on the prosecutor's "obvious misconduct" during voir dire and the improper victim impact testimony he elicited from the victim's mother; (2) failing to call a potential defense witness, Jack Wafford, whose testimony would have supported the petitioner's claim that the victim was the first aggressor in the encounter; and (3) failing to obtain Lockett's testimony at trial or preserve his statement by deposition before his death. We will now review these claims.

## A. Failure to Move for a Mistrial

The petitioner first argues that trial counsel provided ineffective assistance for failing to move for a mistrial in response to allegedly improper comments made by the prosecutor during voir dire and the allegedly improper victim impact testimony offered by the victim's mother. The State argues that the petitioner has waived the issue by his failure to present evidence on this claim at the evidentiary hearing. We agree. The petitioner not only failed to present any evidence in support of this claim, but also failed to raise it as an issue before the post-conviction court. Factual issues not presented to the post-conviction court cannot be raised for the first time on appeal. See Tenn. R. App. P. 36(a); Butler v. State, 789 S.W.2d 898, 902 (Tenn. 1990). Even if not waived, the petitioner would not be entitled to relief on this claim. The transcripts of the trial and the motion for a new trial reveal that trial counsel not only raised timely objections at trial to the allegedly improper voir dire and victim impact testimony, but also raised these issues as grounds for relief at the hearing on the motion for a new trial.

## B. Failure to Call Jack Wafford as Witness at Trial

During the presentation of the defense proof at trial, trial counsel requested in a bench hearing that he be allowed to present the testimony of Jack Wafford, whom, he said, was a cousin of the petitioner's, and whom he believed would testify that the victim had showed him a gun before the shooting, saying, "Is this (sic) for your cousin?" The trial court ruled that Wafford would be allowed to testify for the limited purpose of establishing that the victim was the first aggressor. However, the following day, before Wafford was called to the stand, the prosecutor informed the trial court that he believed a tape recording existed of the defense's interview with the witness, based on the fact that Wafford had told him the previous week that his interview had been taped. The prosecutor told the court that he had asked trial counsel for a copy of the tape recording the previous afternoon, but that trial counsel had been unable to find it, and he was therefore requesting that the witness be prevented from testifying. In response, trial counsel informed the court that he had talked to his investigator, who had told him that the interview had not been recorded, but that, regardless, he would not be calling the witness to testify.

The petitioner now argues, for the first time on appeal, that trial counsel was ineffective for failing to call Wafford as a witness at his trial. According to his argument, trial counsel's deficiency in failing to provide the Jencks material required for Wafford to take the stand, "severely compromised" his claim of self-defense, since without Wafford or Lockett, his only defense

consisted of the testimony of himself and his mother, both of whom the jury could consider biased.

As with the previous claim, the petitioner did not raise this allegation in his original or amended petitions, did not present any evidence on it at the evidentiary hearing, and did not argue it as an issue before the post-conviction court. A petition based on ineffective assistance of counsel is a single ground for relief, therefore all factual allegations must be presented in one claim. See Tenn. Code Ann. § 40-30-206(d) (1997). Thus, we agree with the State that, as with his first claim, this issue has been waived. "Issues not presented in a post-conviction petition and raised for the first time on appeal are waived." State v. David Thomas Barron, No. W1999-01134-CCA-R3-PC, 2000 Tenn. Crim. App. LEXIS 513, at *8 (Tenn. Crim. App. June 30, 2000).

Even if not waived, the petitioner would not be entitled to relief on this claim, since he cannot show either a deficiency in counsel's performance or a resulting prejudice to his case. Although he alleges that counsel was deficient for failing to provide Jencks material, he has presented no proof that a tape recording ever existed of Wafford's interview with trial counsel's investigator which he faults trial counsel for losing. Nor has he shown a reasonable probability that Wafford's testimony would have altered the outcome of his trial. Although trial counsel had informed the trial court of what he expected the witness's testimony would be, the petitioner did not present Wafford as a witness at the evidentiary hearing. Without proof of the testimony Wafford actually would have offered at trial, the petitioner cannot show that he was prejudiced by his failure to appear as a witness. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Moreover, even assuming Wafford had testified at trial in accordance with trial counsel's expectations, we cannot conclude that the jury would have viewed him, the petitioner's cousin, as the "objective witness" the petitioner envisions him to be, or that his testimony, the victim showed him a gun before the shooting, would have altered the outcome of the trial.

## C. Failure to Obtain Lockett's Testimony

The petitioner also argues that trial counsel provided ineffective assistance by his failure to obtain Lockett's testimony before his death. The post-conviction court found, however, that trial counsel adequately prepared and investigated the case, including the possibility of calling Lockett as a witness, and the record supports this finding. Trial counsel's testimony reveals that he made reasonable efforts to locate and interview Lockett prior to trial. In addition to having Lockett subpoenaed twice, trial counsel and investigators from his office made several visits to the home, seeking information from residents of the house and the community. In spite of their efforts, they were unable to ascertain Lockett's whereabouts.

The petitioner asserts that, given the frail state of Lockett's health, trial counsel should have preserved his testimony by deposition for use in post-trial proceedings. However, there was no evidence that trial counsel knew where Lockett could be reached or that his physical health was frail. Moreover, trial counsel explained that the information he had received about Lockett's advanced age and mental condition had led him to believe that his testimony would not be helpful to the defense. In addition, his recollection was that the petitioner's brother, Tony Valentine, had placed Lockett

in the bathroom at the time the shooting occurred, where he could not have been a witness to the event. In light of this evidence, we conclude that the petitioner has not demonstrated that trial counsel provided ineffective assistance by his failure to obtain Lockett's testimony before his death.

We conclude that the record supports the finding of the post-conviction court that the petitioner failed to meet his burden of proving ineffective assistance of counsel by clear and convincing evidence.

### III. Failure to Consider Lockett's Affidavit as Evidence

The petitioner next contends that the post-conviction court erred by its failure to consider Lockett's affidavit in determining the merits of his petition for post-conviction relief, arguing that its failure to do so "resulted in substantial abridgement of [his] right to a fair and unbiased hearing." Asserting that affidavits are "inherently trustworthy," he argues that the post-conviction court should have either considered the Lockett affidavit as submitted, or granted leave so that his post-conviction counsel could establish the proper foundation for its admittance as substantive proof. The State contends that any error in failing to consider the affidavit was harmless, arguing that it provides no support for the petitioner's claim that Lockett's testimony would have altered the outcome of the trial.

The affidavit at issue, dated January 13, 1998, purporting to be signed by "Felix Lockett" and notarized by "N.Y. Spraggins" reads, in pertinent part:

> After Tony Valentine let [the petitioner] into the home Tony went to bed. [The petitioner] went to bed. While [the petitioner] was lying in bed another occupant of the house named Desaron Taylor[3] approached [the petitioner] and said "O D I have got a pistol and I am going to kill you right there in the bed where you are laying."
>
> In about a minute-and-a-half [the petitioner] got up out of bed and said: "Well since you are going to kill me we might as well get it over with now". [sic] At that moment [the petitioner] shot [the victim]. After shooting [the victim], [the petitioner] went outside and waited for the police to arrive. When the police arrived [the petitioner] immediately surrendered.

The admission of evidence generally lies within the sound discretion of the trial court, and will not be reversed on appeal absent a showing of an abuse of discretion. See State v. Edison, 9 S.W.3d 75, 77 (Tenn. 1999); State v. Cauthern, 967 S.W.2d 726, 743 (Tenn. 1998). In ruling the

---

[3]The victim was apparently known by several names, including Desaron Taylor and Deron Cathey. See Clark, 1998 Tenn. Crim. App. LEXIS 446, at *2 n.1.

affidavit inadmissible, the post-conviction court found that a proper foundation for its admittance had not been laid, as there was no proof of the circumstances under which it had been taken or whether the witness was, in fact, dead or otherwise unavailable to testify at the hearing. We find no abuse of discretion in the court's ruling in this matter. The petitioner's testimony was the only evidence presented at the post-conviction hearing to show that the witness was deceased, and post-conviction counsel did not request a continuance in order to obtain proof of the witness's death.[4] With regard to the circumstances under which the affidavit had been made, the petitioner testified only that "from what [he] underst[oo]d," it had been prepared by someone on his behalf, either "O. Z. Evers" or "Reggie, the man own [sic] the funeral home in East Memphis." We note further that the affidavit, which does not bear the seal of a notary public, recites that it was executed on January 13, 1998, nearly eleven months before the first *pro se* petition was filed on December 4, 1998. Although the petitioner asserts on appeal that "[a]ffidavits are deemed so inherently trustworthy that adversarial testing would add little to their reliability," the lack of proof as to how this document came to exist and to bear a shaky and difficult to read signature of what appears to be "Felix Lockett" requires an unwarranted bending of the rules of evidence for it to be utilized in any fashion. Under these circumstances, we cannot conclude that the post-conviction court abused its discretion in refusing to consider the document as evidence at the hearing.

Furthermore, we agree with the State that even if a proper foundation for its admittance had been laid, the affidavit does not support the petitioner's contention that Lockett's testimony would have altered the outcome of his trial. As the State points out, instead of corroborating the petitioner's trial testimony, the account of the shooting provided in the affidavit contradicts many of the details that the petitioner provided at trial, including what the petitioner was doing when confronted by the victim, and how he reacted afterwards. Therefore, the petitioner is not entitled to post-conviction relief on this issue.

## IV. Compliance with Rules of Post-Conviction Procedure

As his final issue, the petitioner contends that he was prejudiced by the failure of his appointed post-conviction counsel and the post-conviction court to comply with various provisions of the Post-Conviction Procedure Act and Supreme Court Rule 28. Specifically, he contends that the post-conviction court failed to hold the evidentiary hearing within the time limits established by the Post-Conviction Procedure Act and Tennessee Supreme Court Rule 28, and that his post-

---

[4]The post-conviction court's order denying relief was entered on October 29, 2001. The technical record contains a December 10, 2001, *pro se* "Motion for Correction or Modification of the Record on Appeal" requesting that the post-conviction court modify the record to include Felix Lockett's death certificate, which had improperly been excluded. Attached to the motion is the petitioner's affidavit stating that Lockett had been scheduled to testify at his evidentiary hearing on June 28, 2001, that the hearing had been continued and rescheduled for October 25, 2001, and that on August 17, 2001, the petitioner had forwarded a copy of Lockett's death certificate to the court clerk. Also included is a certified mail receipt dated August 17, 2001, and a copy of Felix Lockett's death certificate, which lists his date of death as March 27, 1999. At the evidentiary hearing, however, the petitioner made no mention of having mailed the death certificate to the court clerk, in spite of the fact that his testimony occurred after the post-conviction court's ruling on the admissibility of the affidavit.

conviction counsel failed to amend his *pro se* petition within thirty days or certify that the petition would not be amended, as required by Tennessee Code Annotated section 40-30-207(b)(2), and failed to certify that he adequately investigated the case and raised all legitimate grounds for post-conviction relief, as required by Supreme Court Rule 28, § 6(C)(3). He also argues that his post-conviction counsel was deficient for failing to file a copy of Lockett's death certificate, failing to question trial counsel about his failure to comply with Jencks, and failing to file his closing argument with the post-conviction court. The petitioner asks that his case be remanded to the post-conviction court with instructions to comply with the requirements of the Tennessee Legislature and the Tennessee Supreme Court regarding post-conviction proceedings. The State responds by arguing that the petitioner has no constitutional or statutory right to the effective assistance of counsel in a post-conviction proceeding, and that the petitioner has not shown any prejudice resulting from the delay in his case. We agree with the State.

Section 40-30-209(a) of the Post-Conviction Procedure Act and Tennessee Supreme Court Rule 28, Section 8 provide that the post-conviction court shall enter an order setting a hearing within thirty days of the filing of the State's response to the petition, and that the evidentiary hearing shall be held within four calendar months of the entry of the court's order. The Post-Conviction Procedure Act further provides that the deadline "may be extended only by order of the court based upon a finding that unforeseeable circumstances render a continuance a manifest necessity. Such extension shall not exceed sixty (60) days." Tenn. Code Ann. § 40-30-209(a) (1997). The State's response to the petition was filed on February 10, 2000. There is nothing in the record to indicate why the hearing was delayed beyond the four-month period specified. However, in a recent case, this court concluded that a delay in holding an evidentiary hearing does not entitle a petitioner to post-conviction relief:

> Assuming that the post-conviction court did not comply with the time limits set forth in Tennessee Rule of the Supreme Court 28, Section 8, this would not entitle Petitioner to be granted post-conviction relief. Generally, statutory provisions requiring that an act be done within a specified period of time are directory, rather than mandatory. In the post-conviction setting, there is no indication at all that the legislature, or the Tennessee Supreme Court, intended for a petitioner to be granted post-conviction relief simply because of non-compliance of performing an act within a certain time limit.

George Thurman Haynie, Jr. v. State, No. M2001-01522-CCA-R3-PC, 2001 Tenn. Crim. App. LEXIS 1007, at **19-20 (Tenn. Crim. App. Mar. 26, 2002) (citations omitted), app. for perm. to appeal filed (Tenn. June 13, 2002). The post-conviction court found that the petitioner was not prejudiced by the delay in his evidentiary hearing. We agree, and conclude that he is neither entitled to post-conviction relief nor a new evidentiary hearing.

The petitioner also contends that he is entitled to a new evidentiary hearing because of post-conviction counsel's deficient performance, including his failure to certify that he reviewed the post-

conviction petition and investigated all possible constitutional violations. The law is well-established, however, that a petitioner has no statutory or constitutional right to the effective assistance of post-conviction counsel. See House v. State, 911 S.W.2d 705, 712 (Tenn. 1995); Wayford Demonbreun, Jr. v. State, No.01C01-9711-CR-00539, 1999 Tenn. Crim. App. LEXIS 851, at *13 (Tenn. Crim. App. Aug. 19, 1999). In Demonbreun, this court rejected a petitioner's similar claim that he was entitled to a new evidentiary hearing because of the failure of his post-conviction counsel to file certification, finding that it was "akin to alleging that he received ineffective assistance from his post-conviction counsel because the attorney failed to file the required certification." Id. Therefore, the petitioner is not entitled to a new evidentiary hearing or post-conviction relief based on the alleged deficiencies in post-conviction counsel's performance.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the post-conviction court's order dismissing the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE