# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### September 1, 2009 Session

## STATE OF TENNESSEE v. GAYLE THOMAS CRAWFORD

**Direct Appeal from the Circuit Court for Gibson County**
**No. 8310    Clayburn L. Peeples, Judge**

---

**No. W2009-00263-CCA-R3-CD   -   Filed October 7, 2009**

---

The defendant, Gayle Thomas Crawford, was convicted by a Gibson County jury of possession of .5 grams or more of cocaine with the intent to sell or deliver, a Class B felony; possession of marijuana with the intent to sell or deliver, a Class E felony; and possession of drug paraphernalia, a Class A misdemeanor, and was sentenced by the trial court as a Range II, multiple offender to an effective sentence of twenty years at thirty-five percent in the Department of Correction. In a timely appeal to this court, he raises essentially five issues: (1) whether the evidence was sufficient to sustain the convictions; (2) whether the rule of sequestration was violated; (3) whether the trial court erred by allowing a police officer to offer his opinion on the street value of the drugs; (4) whether the trial court erred by allowing an officer to testify that an unknown black male listed in the warrant was the defendant; and (5) whether the search warrant was invalid. Based on our review, we conclude that the evidence was sufficient to sustain the convictions for possession of cocaine and marijuana, the rule of sequestration was not violated, the trial court did not err in allowing the officer's testimony with respect to the street value of drugs and the identity of the unknown black male, and that the defendant has waived the issues with respect to the validity of the search warrant. We further conclude, however, that there was insufficient evidence to sustain the conviction for possession of drug paraphernalia. Accordingly, we affirm the defendant's convictions for possession of .5 grams or more of cocaine with the intent to sell or deliver and possession of marijuana with the intent to sell or deliver and reverse and dismiss the conviction for possession of drug paraphernalia.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed and Dismissed in Part**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID H. WELLES and CAMILLE R. MCMULLEN, JJ., joined.

Harold R. Gunn, Humboldt, Tennessee, for the appellant, Gayle Thomas Crawford.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Garry G. Brown, District Attorney General; and Edward L. Hardister and Harold E. (Hal) Dorsey, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On August 17, 2006, officers of the Twenty-Eighth Judicial District Drug Task Force executed a search warrant at 950 Gibson Wells Road in Humboldt, where the defendant was living with his girlfriend. Their search uncovered 23.3 grams of crack cocaine, 134.7 grams of marijuana, $1117 in cash, two marijuana "roaches" and a walking stick with a concealed dagger in the handle. The defendant admitted that the cash was his and claimed that he had earned it mowing lawns but was unable to provide the officers with the names of any of his customers. He denied that the drugs found at the residence were his but admitted that he had sold both cocaine and fake cocaine following his recent release from prison. He was subsequently indicted for possession of .5 grams or more of cocaine with the intent to sell or deliver, possession of marijuana with the intent to sell or deliver, and possession of drug paraphernalia.

At trial, Agent Danny Lewis of the Humboldt Police Department, a supervisor with the Twenty-Eighth Judicial District Drug Task Force, testified that he executed a search warrant at approximately 6:23 a.m. on August 17, 2006, for 950 Gibson Wells Road, where the defendant was residing with his girlfriend, Pauline Tims. When he entered the residence behind the entry team, Tims was still in bed and the defendant, wearing a t-shirt and boxer shorts, was emerging from the front bedroom in which the couple had been sleeping. He and his fellow officers learned that Tims had just gotten out of the hospital the previous day following heart bypass surgery and therefore called an EMS Team to the scene to take care of her before proceeding with their search.

The search ultimately uncovered the following items: one large and two smaller rocks of crack cocaine in a plastic bag buried in the ground beneath a decorative rock beside the front porch; marijuana in a plastic bag located between two cardboard boxes outside the bathroom; $17 in cash in the top drawer of the chest of drawers in the front bedroom; two bundles of cash totaling $940 and $160 in the bottom drawer of the dresser in the front bedroom; a plastic bag of marijuana underneath a pile of clothes in a clothes basket in the front bedroom; a large plastic bag of marijuana on top of a kitchen cabinet; a walking stick with a dagger or small sword hidden in the handle, which was located in the front bedroom between the dresser and the chest of drawers; a marijuana "roach" in an ashtray in the second bedroom; and a second marijuana "roach" in a drawer in the front bedroom. Agent Lewis testified that a drug dog employed during the search "alerted" on the cash found in the residence, indicating an odor of narcotics on the money. He said he later transported the drugs recovered from the residence to the Tennessee Bureau of Investigation ("TBI") Laboratory for analysis.

Agent Lewis testified that the defendant asked to speak to him while at the residence and, when he agreed, began talking about how he could help the officers on other cases. Lewis said he stopped the defendant, telling him that he wanted to know about the cocaine found at the residence. In response, the defendant told him that he had sold some cocaine and fake cocaine in May of that year, but had since stopped and "was more of a user than anything else." The defendant also told him that he had earned the cash by mowing yards, but he was unable to provide the names of the individuals for whom he had worked. In an interview that took place at the police department later

that same day, the defendant gave essentially the same story, telling Agent Lewis that he lived at the residence with Tims half the time and that he started selling cocaine when he was first released in March 2006 and had sold some "dummies" or fake cocaine, but the "dope" found at the residence had been planted by someone else in an effort to get him locked up. The defendant said he had $600 that he had earned by mowing yards but was again unable to provide the names of the individuals for whom he had worked. He offered no explanation for why the drug dog had altered the officers to the odor of narcotics on the money.

Agent Lewis testified that the street value of the 23.3 grams of crack cocaine found at the residence, which was in a rock of the size typically purchased by a mid-level dealer for resale, was anywhere from $700 to $1100. However, if broken up and sold individually on the street in the smaller amounts purchased by the typical user, the street value would be over $4000. He estimated the street value of the marijuana found at the residence, which totaled over 100 grams, as approximately $500. He said that marijuana is usually sold in either a "dime bag" for $10 or a "20 sack" for $20, with a "dime bag" containing seven or eight grams of marijuana and a "20 sack" approximately double that amount, or anywhere from ten to fifteen grams.

Agent Lewis testified that he had attempted to locate Tims for the trial but had been unsuccessful. On cross-examination, he testified that the officers found two marijuana "roaches" in the residence -- one in an ashtray in the second bedroom and one in a drawer in the front bedroom. He acknowledged that the utility bill for the residence was in Tims's name but said he did not charge her with any offense because she was not "in any condition to do anything." He further acknowledged that no drugs were found on the defendant's person.

Amanda Brown, the court clerk and custodian of the file in the case, testified that the State issued two subpoenas for Pauline Tims, both of which were returned unserved.

Officer Jay Morris of the Gibson County Sheriff's Department, who assisted in the execution of the search warrant, testified that he was present for the defendant's conversation with Agent Lewis at the residence. He said the defendant told Agent Lewis that he had been selling drugs since he had gotten out of the penitentiary in March, but the drugs at the residence were not his. The defendant also told Agent Lewis that he had earned the cash by mowing lawns, but he was unable to remember whose lawns he had mowed.

Officer Eric Uselton of the Crockett County Sheriff's Department, who was present for the defendant's interview at the Humboldt Police Department, testified that the defendant said he had sold cocaine and "dummies" upon his release from prison but denied selling the crack cocaine found at the residence. He said the defendant told them that he had earned the cash by mowing yards.

Finally, TBI Agent Dana Parmenter, an expert in forensic chemistry, testified that she analyzed the substances submitted by Agent Lewis and determined that they consisted of 134.7 grams of marijuana, a Schedule VI controlled substance, and 23.3 grams of cocaine base, a Schedule II controlled substance.

The defendant elected not to testify and rested his case without presenting any proof. The jury convicted him of all three counts as charged in the indictment, and the trial court later sentenced him as a Range II, multiple offender to concurrent terms of twenty years for the cocaine conviction, two years for the marijuana conviction, and eleven months, twenty-nine days for the paraphernalia conviction.

## ANALYSIS

### I. Sufficiency of the Evidence

As his first two issues, the defendant challenges the sufficiency of the evidence in support of his convictions. Specifically, he contends that the circumstantial evidence in the case, which mainly consisted of his presence in the home where the drugs were found, was insufficient to establish his guilt of the offenses beyond a reasonable doubt.

When the sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The defendant was convicted of possession of .5 grams or more of cocaine with the intent to sell or deliver; possession of marijuana with the intent to sell or deliver; and possession of drug paraphernalia. To convict the defendant of the cocaine possession offense, the State was required to show beyond a reasonable doubt that the defendant (1) knowingly possessed cocaine; (2) with the intent to deliver or sell; and (3) the amount of cocaine the defendant possessed was .5 grams or more. Tenn. Code Ann. § 39-17-417(a)(4), (b)(1) (2006). To convict the defendant of the marijuana offense, the State had to show that the defendant (1) knowingly possessed marijuana; (2) with the intent to deliver or sell; and (3) the amount the defendant possessed was "not less than one-half (½) ounce (14.175 grams) nor more than ten pounds (10 lbs.) (4535 grams)." Id. § 39-17-417(a)(4), (g)(1). Finally, to convict the defendant of possession of drug paraphernalia, the State had to show that he used or possessed with the intent to use drug paraphernalia to "plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance." Id. § 39-17-425(a)(1).

Possession of drugs and drug paraphernalia may be constructive as well as actual. State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001); State v. Transou, 928 S.W.2d 949, 955-56 (Tenn. Crim. App. 1996); State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). "Constructive possession requires that a person knowingly have the power and the intention at a given time to exercise dominion and control over an object, either directly or through others. In essence, constructive possession is the ability to reduce an object to actual possession." State v. Copeland, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984) (citation omitted). An individual's mere presence in an area in which drugs are found, or association with another individual in possession of drugs, is not, alone, sufficient to establish constructive possession. Shaw, 37 S.W.3d at 903 (citing State v. Patterson, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997); Cooper, 736 S.W.2d at 129). However, possession of the premises in which contraband is found creates an inference that the possessor had possession of the contraband. See Transou, 928 S.W.2d at 956; Armstrong v. State, 548 S.W.2d 334, 336 (Tenn. Crim. App. 1976).

The defendant argues that any inference of possession of the drugs should be attributed to Tims because it was she, and not he, who was the occupant of the residence. However, while the utility bill to the residence was in Tims's name, the defendant admitted that he shared the residence with her half-time. He further admitted that he had sold cocaine upon his recent release from prison, although he denied that the drugs at the residence were his. He claimed the cash in the residence was money he had earned by mowing lawns, but he was unable to provide the officers with the names of any of his alleged customers and offered no explanation for why the drug dog detected the aroma of narcotics on the money. Finally, Tims had just returned home following heart bypass surgery and was, according to Agent Lewis, in poor health and in no condition "to do anything." From these circumstances, a rational trier of fact could have reasonably inferred that the defendant possessed the drugs found at the residence. Furthermore, based on the amount of marijuana and cocaine that was recovered, a rational trier of fact could have reasonably concluded that the defendant's possession of the drugs was for the purpose of resale rather than his own personal use. Accordingly, we conclude that the evidence was sufficient to sustain the defendant's convictions for possession of marijuana with the intent to sell or deliver and possession of .5 grams or more of cocaine with the intent to sell or deliver.

We further conclude, however, that the evidence was insufficient to sustain the defendant's conviction for possession of drug paraphernalia. Tennessee Code Annotated section 39-17-424, "Determination whether object is drug paraphernalia," provides:

> In determining whether a particular object is drug paraphernalia as defined by § 39-17-402, the court or other authority making that determination shall, in addition to all other logically relevant factors, consider the following:
>
> (1) Statements by the owner or anyone in control of the object concerning its use;
>
> (2) Prior convictions, if any, of the owner or of anyone in control of the object for violation of any state or federal law relating to controlled substances;
>
> (3) The existence of any residue of controlled substances on the object;
>
> (4) Instructions, oral or written, provided with the object concerning its use;
>
> (5) Descriptive materials accompanying the object that explain or depict its use;
>
> (6) The manner in which the object is displayed for sale;
>
> (7) The existence and scope of legitimate uses for the object in the community; and
>
> (8) Expert testimony concerning its use.

Tenn. Code Ann. § 39-17-424 (2006).

The indictment does not specify the item on which the State relied for the drug paraphernalia count, but we presume from the State's case-in-chief that it was the walking stick found in the corner of the defendant's bedroom. During his direct examination testimony, Agent Lewis identified the device as a "conversational piece . . . a walking stick with a dagger or small sword in the handle" and said that it was not an illegal weapon to possess unless "you were wielding it somewhere on the street." When asked whether, based on his training and experience, it was an item "relevant to narcotics trafficking," he replied: "I don't think I can say that. It could be used as a weapon to defend yourself, but I don't know what he was using it for." No other evidence was offered with respect to the purpose or use of the item. We conclude, therefore, that the evidence was insufficient to sustain the defendant's conviction for possession of drug paraphernalia, and, accordingly, reverse the conviction.

## II.  Alleged Violation of Rule of Sequestration

As his next issue, the defendant contends that the rule of sequestration was violated when Agent Lewis conferred with the assistant district attorneys during a break in his testimony.  The State responds by arguing, alternatively, that the defendant waived the issue by not raising a contemporaneous objection and that the record shows that no violation of Tennessee Rule of Evidence 615 occurred.

Rule 615 provides that "[a]t the request of a party the court shall order witnesses, including rebuttal witnesses, excluded at trial or other adjudicatory hearing."  Tenn. R. Evid. 615.  Furthermore, "[t]he court shall order all persons not to disclose by any means to excluded witnesses any live trial testimony or exhibits created in the courtroom by a witness."  Id.  The purpose of the rule of sequestration is to prevent witnesses from hearing the testimony of other witnesses and subsequently adjusting their testimony.  State v. Harris, 839 S.W.2d 54, 68 (Tenn. 1992).

The record reflects that the prosecutor requested a five-minute recess during Agent Lewis' testimony, informing the court that he needed "to look at the Court's file about something."  When the trial resumed, he continued his direct examination without objection from the defense.  At the conclusion of Agent Lewis' cross-examination testimony, defense counsel asked if he had spoken to the prosecutors during the recent recess.  He answered that he had but denied that he had told the prosecutors "to go do something."  On redirect examination, Agent Lewis testified that his testimony was in no way affected by anything the prosecutors said to him during the break in the case.  A jury-out hearing followed, during which defense counsel asked Agent Lewis if he had suggested that the prosecutors ask him how long he had observed Tims while at the residence.  Agent Lewis denied that he had suggested that or any other question and said that the only thing he had done was to show them a sheet from "the EMS" that was in his file.

We agree with the State that the record shows no violation of the rule of sequestration.  Rule 615 "does not affect the practice of preparing witnesses by discussing their own testimony with counsel or others, as long as the actual in-court testimony of other witnesses or the content of exhibits created in the courtroom is not discussed."  Neil P. Cohen et al., Tennessee Law of Evidence § 6.15[9] (5th ed. 2005).  Agent Lewis was the State's first witness, and there was no evidence that the prosecutors discussed any of the other witnesses' proposed testimony with him.  We conclude, therefore, that the defendant is not entitled to relief on the basis of this issue.

## III.  Opinion Testimony on Street Value of Drugs

As his next issue, the defendant contends that the trial court erred by allowing Agent Lewis to offer his opinion as to the street value of the drugs found in the residence.  The State argues, *inter alia*, that the defendant has waived the specific issue with respect to the street value of the cocaine by challenging only the testimony with respect to the value of the marijuana in his motion for new trial.  The State further argues that the trial court properly allowed the testimony.

As an initial matter, we agree with the State that the defendant has waived any challenge to Agent Lewis' opinion testimony with respect to the street value of the cocaine by not including it in

his motion for new trial. See Tenn. R. App. P. 3(e) (stating that "in all cases tried by a jury, no issue presented for review shall be predicated upon error in . . . jury instructions granted or refused, . . . or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived").

We further agree that the trial court properly allowed the testimony. At trial, the prosecutor suggested that Agent Lewis should be allowed to offer his opinion on the street value of the drugs as a lay witness with specialized knowledge that would substantially assist the trier of fact to understand the case. The rule of evidence the prosecutor cited in support, however, deals with expert opinion testimony. Tennessee Rule of Evidence 702, "Testimony by Experts," provides:

> If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise.

Although neither the prosecutor nor the trial court specifically referred to him as such, Agent Lewis clearly qualified as an expert witness in the field of illegal drug trade and the street value of controlled substances. This court has previously held that an officer with the requisite training and experience may testify about matters relating to drug trade under Tennessee Rule of Evidence 702. See, e.g., State v. Daniel Potin, No. W2005-01100-CCA-R3-CD, 2006 WL 1548672, at *4 (Tenn. Crim. App. June 7, 2006), perm. to appeal denied (Tenn. Nov. 13, 2006); State v. Timothy Murrell, W2001-02279-CCA-R3-CD, 2003 WL 21644591, at **6-7 (Tenn. Crim. App. July 2, 2003). Agent Lewis testified that he had been a police officer for twenty-six years, had worked narcotics cases since the early 1990's, had handled thousands of drug cases during his career, and had been assigned upon its creation to the drug task force, where he was currently a supervisor. He also made it clear that he was basing his opinion as to the value of the drugs on the undercover drug purchases that his team had made, testifying, for example, that they often paid $100 a gram for crack cocaine and had "given anywhere" from $700 to $1100 for a rock of the same weight as that found at the residence. The trial court is given broad discretion in resolving questions concerning the admissibility of expert testimony, and we will not overturn its ruling absent a finding that it abused its discretion. See State v. Stevens, 78 S.W.3d 817, 832 (Tenn. 2002). In light of Agent Lewis' extensive expertise and experience in the illegal drug trade, we conclude that the trial court did not abuse its discretion in allowing him to offer his opinion as to the street value of the drugs uncovered in the residence.

## IV. Identification of Defendant as "Unknown Black Male" on Search Warrant

The defendant next contends that the trial court erred by allowing Agent Lewis to speculate that he was the "unknown black male" listed in the search warrant, arguing that such an assumption "removed the reasonable doubt that the drugs found belonged to the unknown black male[.]" The admission of evidence generally lies within the sound discretion of the trial court and will not be reversed on appeal absent a showing of an abuse of discretion. See State v. Robinson, 146 S.W.3d 469, 490 (Tenn. 2004); State v. Gilliland, 22 S.W.3d 266, 270 (Tenn. 2000); State v. Edison, 9 S.W.3d 75, 77 (Tenn. 1999). We review this issue, therefore, under an abuse of discretion standard.

The search warrant listed three individuals at the address: "unknown Black Male, Gayle Crawford, black male" and "Pauline Tims, black female[.]" Defense counsel repeatedly brought up this fact during his opening statement to argue that the drugs found at the residence could have belonged either to Pauline Tims or the unknown black male, neither of whom was going to appear as a witness for the State. In response, the prosecutor asked Agent Lewis during direct examination whether he had ever learned the identity of the unknown black male. Agent Lewis responded that he believed it was the defendant, explaining that he had obtained the search warrant based on information from two confidential informants, one of whom did not know the defendant. As he began to relate what he had learned from that informant, defense counsel objected first on the basis of hearsay and then on the basis that the officer should not be allowed to testify about his assumptions. The following exchange then occurred:

> THE COURT: And you can -- either one of you can ask him why he assumed that and it may be that his assumptions are based on matters that cannot come into evidence.

> [DEFENSE COUNSEL]: Well, then it shouldn't be introduced.

> THE COURT: Well, there's no way to know that, [Defense Counsel], until we do know that.

> [DEFENSE COUNSEL]: I think at this point when Officer Lewis said he assumed and then he goes to relate –

> THE COURT: I'm well aware of your attitude about assuming; however, people do that and he has a right to explain why he made that assumption.

> [DEFENSE COUNSEL]: I object on the record, Your Honor.

> THE COURT: All right, sir.

Thereafter, Agent Lewis more fully explained the basis for his belief that the defendant was the unknown black male, testifying that the first informant "just saw criminal activity and a black male that he didn't know at this address." Agent Lewis said that he investigated further and learned that Pauline Tims lived at the residence with her boyfriend, the defendant. He also said he had in the past personally observed the defendant in the yard of the residence.

We find no abuse of discretion in the trial court's handling of this matter and, therefore, conclude that the defendant is not entitled to relief on the basis of this issue.

## V. Validity of the Search Warrant

The defendant challenges the validity of the search warrant in his two final issues, arguing that it was fundamentally unfair for Agent Lewis to keep the original search warrant and evidence log rather than return them to the magistrate, "since he could have changed whatever he felt would be

needed to convict the defendant[,]" and that the search warrant was invalid due to unsubstantiated facts contained in Agent Lewis' supporting affidavit. The State responds by arguing that the defendant has waived any challenge to the validity of the warrant by failing to raise these issues in either a pretrial motion to suppress or a contemporaneous objection at trial and by failing to include an adequate record on appeal. We agree with the State.

The State introduced the search warrant as an exhibit at trial, but neither the State nor the defendant introduced Agent Lewis' affidavit in support of the search warrant or his inventory log of the items seized from the residence. Furthermore, there is nothing in the record to show that the defendant filed any pretrial motion to suppress the results of the search warrant or that he raised any objection to the validity of the warrant at trial. As such, we conclude that the defendant has waived these issues on appeal. See Tenn. R. App. P. 24(b); Tenn. R. App. P. 36(a).

## CONCLUSION

Based on our review, we conclude that the evidence was sufficient to sustain the defendant's drug convictions, there was no violation of the rule of sequestration and no error in the trial court's evidentiary rulings, and the defendant has waived his challenges to the validity of the search warrant. We further conclude that the evidence was insufficient to sustain the defendant's misdemeanor conviction for possession of drug paraphernalia. Accordingly, we affirm the convictions for possession of .5 grams or more of cocaine with the intent to sell or deliver and possession of marijuana with the intent to sell or deliver and reverse and dismiss the conviction for possession of drug paraphernalia.

ALAN E. GLENN, JUDGE